CHARLES T. CADWELL v. LORENZO COREY.

91   335|
e148  '653|

*Malicious prosecution of attachment—Pleading—Termination of suit—Evidence.*

1. Counts for maliciously suing out a writ of attachment based upon a false allegation of dishonesty and fraud in the contraction of the debt may be joined with a count for circulating reports of the same general character, and referring to the same dealings between the parties, and the plaintiff cannot be compelled to an election of counts.

2. An action for maliciously suing out a writ of attachment may be commenced before the termination of the attachment suit (*Brand v. Hinchman*, 68 Mich. 590), but not while dissolution proceedings are pending.

3. If, after the commencement of a suit for maliciously suing out a writ of attachment, a motion is made for its dissolution, and the writ is dissolved, such fact may be shown by the plaintiff, and, if a dissolution is denied, the defendant may change his plea, and set up such latter adjudication.

Error to Montcalm.   (Smith, J.)   Submitted on briefs March 11, 1892.   Decided April 8, 1892.

Case.   Plaintiff brings error.   Reversed.   The facts are stated in the opinion.

*George S. Steere*, for appellant.

*N. O. Griswold*, for defendant, contended:

1. Plaintiff is not entitled to show in evidence, by the records of the attachment suit or otherwise, matters which occurred after he brought his suit.

2. Without showing some facts which occurred after plaintiff brought his suit, his claim for damages could not be established as a matter of fact.

3. In actions for maliciously prosecuting a suit at law, it is essential that the proceedings complained of be terminated in favor of the plaintiff, and this should be averred and proved; citing *Stanton v. Hart*, 27 Mich. 538; *Hamilton v. Smith*, 39 Id. 225;

*Sutton v. Van Akin,* 51 Id. 464; *Pratt v. Page,* 18 Wis. 337; *Winn v. Peckham,* 42 Id. 493; *Stewart v. Sonneborn,* 98 U. S. 187; *Severance v. Judkins,* 73 Me. 376; *O'Brien v. Barry,* 106 Mass. 300; *Cardival v. Smith,* 109 Id. 158; *Gilbert v. Emmons,* 42 Ill. 143; *Fay v. O'Neill,* 36 N. Y. 11.

McGRATH, J. Plaintiff brings an action on the case. His declaration contains four counts.

The first count, after setting forth that plaintiff was a true, honest, just, and faithful citizen, had never been suspected of dishonesty or trickery, and had deservedly obtained the good opinion and credit of his neighbors and other good and worthy citizens, sets forth that on the 31st day of December, 1890, and for a number of years prior thereto, plaintiff had been engaged in business, and in such business deservedly enjoyed an unquestioned credit, a large and constantly increasing trade, and was in easy and comfortable financial circumstances, and was reaping large profits; that defendant, contriving and maliciously intending to injure plaintiff in his good name, fame, and credit, and to injure and annoy him in and about his business, and to break up said business, on the date last named filed in the clerk's office an affidavit in attachment, which is set forth in full. The affidavit alleges that the plaintiff here is indebted to the defendant here in the sum of $8,431, and that defendant—

"Has good reason to believe, and does believe, that the said Charles T. Cadwell has fraudulently contracted the debt and incurred the obligation above described."

The declaration alleges that said affidavit was false and malicious, and was made without any reason or probable cause whatever; and that defendant, "further contriving and maliciously and wickedly intending to injure the said plaintiff, sued out of said court a writ of attachment in the usual form against the lands, tenements, goods, chattels, moneys, and effects of said plaintiff,"

which writ of attachment was dated December 31, 1890; that, by virtue of said writ of attachment, the sheriff did proceed to levy and seize upon the goods and chattels of the plaintiff, describing said goods and chattels; that the said levy and seizure were made at the instance of defendant; that possession of said goods and chattels was taken and held for a long space of time, thereby disturbing and injuring the business of the plaintiff; that said attachment was known to plaintiff's customers, and to the trade generally, and plaintiff was greatly injured in his credit and reputation; that plaintiff was compelled to move for the dissolution of said writ of attachment, and was thereby put to great inconvenience and expense in obtaining such dissolution and in defending said suit.

Plaintiff alleges that—

"He did not on the 31st day of December, A. D. 1890, owe the said defendant the sum of $8,431, or any part thereof; that he never fraudulently contracted any debt or incurred any obligation to the said defendant or any other man; that said defendant well knew these facts, and made the affidavit aforesaid and procured the said writ of attachment for the express purpose as hereinbefore set forth, and without any reasonable cause to believe that plaintiff had fraudulently incurred any obligation towards the said defendant, as in said affidavit described, and had no good reason to believe that his affidavit for writ of attachment was true in any sense whatever; that plaintiff's credit has been greatly injured by reason of said attachment; that his business has been broken up, and that said defendant has caused news of said attachment to be circulated among the patrons and customers of said plaintiff, and to be advertised and published and circulated in the city of Stanton aforesaid, State of Michigan, and in other states, where the said plaintiff had business and had customers, and that the circulation of said reports, and the taking out of said attachment in manner aforesaid, has greatly injured said plaintiff."

The second count is a summary of the first.

91 MICH.—22.

The third count alleges great injury to his credit and reputation with one Knapp, between whom and plaintiff certain business relations existed, and the destruction of that business.

The fourth count charges that the said defendant, "intending to injure and destroy the good name, reputation, and credit of plaintiff in his trade and business, and to cause him to be regarded as a person of no credit, worth, or substance, and in insolvent circumstances and dishonest, and unworthy of the confidence of the business community, and the persons with whom he did business," on December 31, 1890, in the hearing of divers persons, publicly, falsely, and maliciously said and declared of and concerning the plaintiff, and his circumstances and his trade and his said business, and of and concerning the honesty of the plaintiff, certain false, scandalous words. Then is set forth, with the proper innuendo, the language, which was as follows:

"Cad. is bankrupt now. I don't know where his money has gone to. He couldn't pay a dollar. That it was a deliberate steal on Charlie's part. I never was let down so. I had so much confidence in Charlie, I was not looking for it."

It further alleges that, with further malice towards plaintiff, the defendant, on the same day, in another discourse, published of and concerning plaintiff certain other false, malicious, and slanderous words. Then is set forth, with innuendo, the words, which were as follows:

"I calculate he is done doing business in this county; that I will tie him up so he cannot do business; and that I have tied him up so that he cannot do business any more in this county; and that he can never do any more business in this county again; that he could not find any property belonging to plaintiff, and that he could not find any property amounting to anything

belonging to plaintiff; that Cad. couldn't help you; that he was bankrupt, and was a damned dirty scoundrel; that he had put too much confidence in him; loaned him money; given him his name,—then to have him turn around and cut my throat in that way; that he was bankrupt and didn't own a dollar."

1. We do not think that, under this declaration, plaintiff should have been compelled to elect as to which count or counts of his declaration he would proceed under. The declaration sets up the filing of an affidavit charging plaintiff with fraudulently contracting the debt, the suing out of a writ of attachment based upon said affidavit, the seizure of plaintiff's goods by virtue of said writ; and, in the last count, the circulation of a report that plaintiff was bankrupt; that the indebtedness arose out of a deliberate steal on plaintiff's part; that no property belonging to plaintiff could be found; that plaintiff was a dirty scoundrel; and that defendant had helped plaintiff financially, and that in return plaintiff had turned and cut his throat. The seizure of plaintiff's goods, the injury to his business, and the expense and trouble of a defense are set up, but, in addition thereto, the declaration counts upon and the principal complaint is the injury to plaintiff's reputation, fame, and credit as a business man.

Mr. Cooley, in his valuable work on Torts, says:

"The wrong of a malicious prosecution is akin to the wrongs known under the designation of slander and libel. Though it is injurious in that it is likely to subject the party to expense and trouble to make good his defense, it is also a most effective species of defamation, the defamatory matter being not only published, but made more formal, and apparently authoritative, by the machinery of the law being made use of for the purpose." Chapter 7, p. 193.

The malicious suing out of a writ of attachment based

upon a false allegation of dishonesty and fraud in the contraction of the debt is injurious and actionable, in that it is defamatory. The reports circulated by defendant were of the same general character, referred to the same dealings between the parties, and were likewise defamatory of plaintiff's reputation, fame, and credit as a merchant. It is well settled that, in an action for slander, plaintiff, after proving the words alleged, may give in evidence other slanderous words of like import, to show malice, or may show a repetition of the slander in aggravation of damages; nor does the rule limit the evidence to *verbatim* repetitions, but allows proof of "substantially similar slanders likely to make the same impression on the community." *Thompson v. Bowers,* 1 Doug. 321; *Leonard v. Pope,* 27 Mich. 145; *Fowler v. Gilbert,* 38 Id. 292; *Brown v. Barnes,* 39 Id. 211. The real *gravamen* of actions for malicious prosecution being defamation of character, why should not the plaintiff be permitted to prove other charges of the same slanderous character, which are calculated to produce the same effect? As the plaintiff was entitled to make proof of these slanderous charges without counting upon them, he was entitled to set them up in a separate count in the same declaration, and to go to trial upon them in connection with the other allegations. Repetitions of a slander tend to show malice, and plaintiff cannot be deprived of the right to make the showing because he has counted upon such repetition.

2. After having elected to proceed upon the first three counts of his declaration, the court directed a verdict for defendant, for the reason that the attachment suit had not been determined when this suit was commenced. The case of *Brand v. Hinchman,* 68 Mich. 590, is decisive of that question. It was there held that the settle-

ment of the claim for which the action was brought did not bar the institution of a suit for maliciously suing out the writ, and that such suit could be maintained without reference to the *status* of the first suit. It appeared here that, after the institution of this suit, defendant in the attachment suit moved for a dissolution of the attachment, and the same was dissolved. Under the rule laid down in *Brand v. Hinchman,* a motion to dissolve in the forum provided by statute need not precede the bringing of the suit for maliciously suing out the writ. It is undoubtedly true that, had the motion to dissolve the attachment been first made, plaintiff would have been compelled to wait until the determination of that proceeding before bringing this suit, but the motion to dissolve afterwards made did not affect the suit once instituted. Plaintiff would have a right to show the subsequent dissolution of the writ, and defendant, in case there had been an adjudication in his favor, could change his plea, and set up such adjudication.

The judgment below is reversed, and a new trial ordered, with costs of this Court to plaintiff.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred with McGRATH, J. GRANT, J., concurred in the result.